IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

C.Y.M. CHI and V.L. CHI, on behalf
of themselves and all others similarly
situated, et al.,

   Plaintiffs,

    v.

MASTERCARD INTERNATIONAL,
INC.,

   Defendant.

CIVIL ACTION FILE
NO. 1:14-CV-614-TWT

**OPINION AND ORDER**

This is a civil RICO action. It is before the Court on the Defendant's Motion to Dismiss for Failure to State a Claim [Doc. 16] and the Plaintiffs' Motion to Exclude the Declaration of Gary R. Carney [Doc. 27]. For the reasons stated below, the Defendant's Motion to Dismiss is GRANTED. The Plaintiffs' Motion to Exclude is DENIED.

**I. Background**

On a motion to dismiss, the Court takes as true the facts alleged by the plaintiff. The Plaintiffs, C.Y.M. Chi and V.L. Chi, allege, on behalf of themselves and others similarly situated, as follows: Vertrue, through its subsidiary Adaptive Marketing,

operates "consumer savings clubs" or "membership clubs" that charge monthly fees.[1] Most consumers are enrolled in these programs accidentally when making other purchases through online merchants.[2] Vertrue creates the impression that the membership clubs are part of the transactions with the online merchants.[3] When a consumer joins one of the membership clubs, the online merchant uses the "data pass" method to send credit card information from the merchant to Vertrue without the customer's permission.[4] Vertrue then charges the consumer's credit card monthly until the consumer opts out of the program.[5]

With respect to MasterCard, the Plaintiffs allege that MasterCard processes the fraudulent transactions initiated by Vertrue.[6] MasterCard receives fees from Vertrue

---

[1] Pls.' First Amended Compl. ¶ 9.

[2] Id. ¶¶ 10, 12, 14.

[3] Id. ¶ 15.

[4] Id. ¶¶ 17, 18.

[5] Id. ¶¶ 18, 23.

[6] Id. ¶¶ 5, 18.

and the online merchants for processing the transactions.[7] The Plaintiffs allege that MasterCard continued processing the transactions, despite knowing their true nature.[8]

The Chis allege that they were enrolled in one of Vertrue's membership clubs when they provided their MasterCard information to enroll in another online service.[9] The membership club, SavingsAce, charged the Chis $666.55 from April 2011 to August 2013.[10] The Chis obtained a refund of the charges, but have not been refunded for interest.[11] The Chis also allege that the class of plaintiffs who are similarly situated suffered damages in excess of five million dollars.[12]

The Plaintiffs initially filed their Complaint on February 28, 2014, against Vertrue, Inc., Adaptive Marketing, LLC, Velo Holdings, Inc., MyLife.com, Inc., Oak Investment Partners XII, L.P., and MasterCard International, Inc.[13] On March 27, 2014, the Plaintiffs voluntarily dismissed the Defendants MyLife.com and Oak

---

[7] Id. ¶¶ 18, 19.

[8] Id. ¶ 20.

[9] Id. ¶¶ 63, 64.

[10] Id. ¶ 65.

[11] Id. ¶ 66.

[12] Id. ¶ 7.

[13] Pls.' Compl. [Doc. 1].

Investment Partners XII.[14] On April 4, 2014, the Plaintiffs filed the First Amended Complaint at issue here.[15] MasterCard then filed this Motion to Dismiss for Failure to State a Claim on May 5, 2014.[16] The following day, the Plaintiffs voluntarily dismissed all remaining defendants, with the exception of MasterCard.[17] Then, on May 22, 2014, the Plaintiffs filed a Motion for Leave to File Second Amended Complaint,[18] which this Court denied as futile on July 11, 2014.[19]

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[20] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is

---

[14] Pls.' Notice of Voluntary Dismissal [Doc. 7].

[15] Pls.' First Amended Compl. [Doc. 8].

[16] Def.'s Mot. to Dismiss [Doc. 16].

[17] Pls.' Notice of Voluntary Dismissal [Doc. 18].

[18] Pls.' Mot. for Leave to File Second Amended Compl. [Doc. 23].

[19] Order Denying Mot. for Leave to File Second Amended Compl. [Doc. 30].

[20] <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

extremely "remote and unlikely."[21] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[22] Generally, notice pleading is all that is required for a valid complaint.[23] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[24]

### III. Discussion

**A. Motion to Exclude**

The Defendant filed the Declaration of Gary R. Carney [Doc. 25-1] to oppose the Plaintiffs' Motion for Leave to File a Second Amended Complaint [Doc. 23]. The Plaintiffs now object to the declaration, arguing that it includes evidence of settlement negotiations in violation of Federal Rule of Evidence 408.[25] Rule 408 bars the use of

---

[21] Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[22] See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[23] See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

[24] See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

[25] Pls.' Mot. to Exclude the Decl. of Gary R. Carney, at 4.

compromise offers and statements made during compromise negotiations when used "to prove or disprove the validity or amount of a disputed claim."[26] Such evidence may, however, be used for any other purpose.[27]

Here, the Defendant offered the Carney Declaration to argue that the Plaintiffs should not be granted leave to amend their Complaint a second time.[28] The Court has already denied the motion for leave to amend. The motion to exclude is therefore moot as it applies to the motion for leave to amend. On a motion to dismiss, the Court considers the Complaint and documents attached to it. Because there is no need to consider the Carney Declaration with regard to the motion to dismiss and the Defendant offered the declaration for a purpose other than disputing the validity of the claim, the motion to exclude is denied.

**B. Motion to Dismiss**

**1. RICO Claims**

The Defendant moves to dismiss the Plaintiffs' RICO Claims. As an initial matter, the Plaintiffs have indicated that they do not intend to pursue the RICO claims

---

[26] FED. R. EVID. 408(a).

[27] FED. R. EVID. 408(b).

[28] Def.'s Opp'n to Pls.' Mot. to Exclude the Dec. of Gary R. Carney, at 1.

further.[29] Because this Court denied the Plaintiffs' motion for leave to file a second amended complaint, however, the RICO claims are still before this Court. In the Eleventh Circuit, to establish a civil RICO claim, plaintiffs must prove conduct of an enterprise through a pattern of racketeering activity.[30] This Court finds that the Plaintiffs' RICO claims should be dismissed.

First, the Plaintiffs failed to plead sufficient facts to show a RICO enterprise. To show a RICO enterprise, plaintiffs must plead facts to show "a group of persons associat[ing], formally or informally, with the purpose of conducting illegal activity."[31] To be a part of the enterprise, the defendant must have "some part in directing the enterprise's affairs."[32] "[O]ne is not liable under [RICO] unless one has participated in the operation or management of the enterprise itself."[33] Simply providing financial services or processing credit card transactions is not enough to

---

[29] Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 2-3.

[30] Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282 (11th Cir. 2006).

[31] Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1264 (11th Cir. 2004).

[32] Reves v. Ernst & Young, 507 U.S. 170, 179 (1993).

[33] Id. at 183.

establish "operation or management" of an enterprise.[34] Courts have specifically held that where credit card companies are carrying out their business of processing transactions, they are not participating in a RICO enterprise.[35]

Here, the Plaintiffs allege that MasterCard processed the fraudulent membership charges initiated by Vertrue.[36] They do not allege any agreement between MasterCard and Vertrue. Nor do they allege any facts that suggest MasterCard did anything other than act as a credit card company in the normal course of business. The court in Trilegiant held, in a nearly identical situation, that where credit card companies were merely processing "savings club" charges, the plaintiffs did not allege sufficient facts for a RICO enterprise.[37] Similarly, here, MasterCard was merely processing the charges. The Plaintiffs have not alleged sufficient facts to show a RICO enterprise.

---

[34] Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd., 534 F. Supp. 2d 1326, 1337-38 (S.D. Fla. 2008); Jubelirer v. MasterCard Int'l, Inc., 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999).

[35] In re Trilegiant Corp., No. 3:12-cv-00396 (VLB), 2014 WL 1315244, at *10 (D. Conn. Mar. 28, 2014); In re MasterCard Int'l, Inc., Internet Gambling Litig., 132 F. Supp. 2d 468, 486-87 (E.D. La. 2001).

[36] Pls.' First Amended Compl. ¶¶ 38, 42.

[37] In re Trilegiant, 2014 WL 1315244, at *10.

Second, the Plaintiffs failed to plead sufficient facts showing a pattern of racketeering activity. The Plaintiffs must show at least two related predicate acts.[38] Predicate acts based on fraud must be pleaded with increased specificity under Federal Rule of Civil Procedure 9(b).[39] Here, the Plaintiffs allege the predicate acts of mail fraud, wire fraud, and bank fraud.[40]

Mail and wire fraud have identical elements, both requiring proof of intentional participation in a scheme to defraud another of money or property and using the mail or wires in furtherance of that scheme.[41] The Plaintiffs failed to plead both predicate offenses with the required specificity. Rule 9(b) requires that plaintiffs demonstrate (1) the precise statements or misrepresentations made, (2) when, where, and by whom the statement was made, (3) how the statement misled the plaintiffs, and (4) what the defendants gained from the misrepresentation.[42] Where there are no affirmative

---

[38] American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290-91 (11th Cir. 2010).

[39] Id. at 1291; FED. R. CIV. P. 9(b).

[40] Pls.' First Amended Compl. ¶ 84.

[41] United States v. Downs, 870 F.2d 613, 615 (11th Cir. 1989).

[42] Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997).

misrepresentations and no duty to disclose, RICO claims must be dismissed.[43] Here, the Plaintiffs make no allegations of specific statements from MasterCard that misled them, much less when any statements occurred or who made them. Instead, the Plaintiffs make general allegations about electronic, mail, and telephone conversations.[44] From these facts, it is impossible for the Court to conclude that MasterCard was doing anything other than operating as a legitimate financial institution, which is not actionable under RICO.[45] Similarly, the Plaintiffs cannot and do not allege facts to support bank fraud as a predicate act. Bank fraud requires harm to a financial institution.[46] Here, the Plaintiffs are individuals, not banks. They therefore cannot allege facts to support a claim for bank fraud as a predicate act.

Third, the Plaintiffs' RICO conspiracy claims must be dismissed. Where an underlying RICO claim fails, and the plaintiff does not allege additional facts to

---

[43] American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1065 (11th Cir. 2007).

[44] Pls.' First Amended Compl. ¶ 86.

[45] Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 949-50 (11th Cir. 1997) (finding that routine banking transactions do not demonstrate the requisite intent under RICO).

[46] E.g., Ward v. Nierlich, 617 F. Supp. 2d 1226, 1233-34 (S.D. Fla. 2008) (holding that plaintiff lacked standing for a bank fraud claim because plaintiff was not a financial institution).

support a RICO conspiracy claim, the conspiracy claim must also fail.[47] Count II of the Plaintiffs' First Amended Complaint alleges a RICO conspiracy.[48] It does not, however, add any additional facts. Instead it concludes that there was an agreement and references "numerous overt acts as alleged above."[49] Because the RICO conspiracy claim does not allege any additional facts, it must be dismissed as well.

Fourth, the Plaintiffs' RICO aiding and abetting claims must be dismissed. This Court declines to address whether RICO aiding and abetting liability exists in the Eleventh Circuit after the Supreme Court's holding in <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>[50] because whether or not such liability exists, the Plaintiffs have failed to plead sufficient facts to state a claim. The Eleventh Circuit has found that simply stating that defendants "aided and abetted," without more, is not sufficient to survive a motion to dismiss.[51] Here, the Plaintiffs allege no additional facts to support their aiding and abetting claim.[52]

---

[47] <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1269 (11th Cir. 2004).

[48] Pls.' First Amended Compl. ¶¶ 100-03.

[49] <u>Id.</u> ¶¶ 101, 102.

[50] 511 U.S. 164 (1994).

[51] <u>Edwards v. Prime, Inc.</u>, 602 F.3d 1276, 1300 (11th Cir. 2010).

[52] Pls.' First Amended Compl. ¶¶ 100-03.

## 2. Other Federal Aiding and Abetting Claims

The Plaintiffs also make claims against MasterCard for aiding and abetting mail, wire, and bank fraud, as well as a claim for aiding and abetting violations of the Electronic Communications Privacy Act ("ECPA").[53] Again, the Plaintiffs do not appear to dispute the Defendant's motion on these claims. Even if the Plaintiffs did dispute the motion, the claims must be dismissed.

First, the Eleventh Circuit has recognized that there is no stand-alone private right of action for violating the mail, wire, or bank fraud statutes – instead those statutes are enforced through RICO.[54] The claim for aiding and abetting mail, wire, and bank fraud therefore restates the Plaintiffs' RICO aiding and abetting claim, which this Court has already dismissed. This claim, stated in Count IV of the Complaint, must necessarily be dismissed as well.

Second, the Plaintiffs' claim for aiding and abetting violations of the ECPA must be dismissed. Courts have held that no cause of action for ECPA aiding and

---

[53] Id. ¶¶ 108-11, 120-23.

[54] Ayres v. General Motors Corp., 234 F.3d 514, 519 n.8 (11th Cir. 2000).

abetting exists.[55] Because no such cause of action exists, the Plaintiffs cannot state a claim and cannot survive a motion to dismiss on that count.

### 3. State Law Claims

As a threshold matter, MasterCard argues that the state law claims should be dismissed for lack of jurisdiction.[56] Taking the allegations in the Complaint as true, however, the Plaintiffs are diverse from MasterCard and allege a class action with an amount in controversy over five million dollars,[57] which suffices for diversity jurisdiction.[58] As discussed below, however, the state law claims must be dismissed for failure to state a claim.

#### a. Tennessee Consumer Protection Act Claims

Again, the Plaintiffs do not appear to dispute the motion to dismiss on these claims. Regardless, the claims must be dismissed. The Tennessee Consumer Protection Act ("TCPA") requires proof that the defendant engaged in an "unfair or

---

[55] E.g., Kirch v. Embarq Mgmt. Co., 702 F.3d 1245, 1246-47 (10th Cir. 2012); Freeman v. DirecTV, 457 F.3d 1001, 1004-07 (9th Cir. 2006); Peavy v. WFAA-TV, Inc., 221 F.3d 158, 169 (5th Cir. 2000).

[56] Def.'s Mot. to Dismiss, at 22.

[57] Pls.' First Amended Compl. ¶¶ 1, 5, 7.

[58] 28 U.S.C. § 1332(d)(2) (2012).

deceptive act or practice" that caused a tangible loss to the plaintiff.[59] Additionally, where the defendant does not make any representations or sell the product, there is no liability under the TCPA.[60] The Plaintiffs cannot and did not plead facts to support this claim. Specifically, the Plaintiffs allege that MasterCard was merely processing the credit card transactions, not that they marketed the membership clubs.[61] The Plaintiffs also add a claim for aiding and abetting violations of the TCPA.[62] They do not allege a statutory or common law basis for that claim, however, nor does one appear to exist. Both claims under the TCPA must be dismissed.

### b. Aiding and Abetting Fraudulent Misrepresentation

Here again, the Plaintiffs do not appear to oppose the motion to dismiss, but the claim for aiding and abetting fraudulent misrepresentation must be dismissed regardless. Under Tennessee law, aiding and abetting fraud requires proof that MasterCard knew of Vertrue's alleged breach of duty and purposefully rendered

---

[59] Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005).

[60] Messer Griesheim Indus. v. Cryotech of Kingsport, Inc., 45 S.W.3d 588, 610 (Tenn. Ct. App. 2001).

[61] Pls.' First Amended Compl. ¶ 128.

[62] Id. ¶¶ 130-33.

substantial assistance or encouragement in support of the fraud.[63] Here, even taking as true the Plaintiffs' allegations that MasterCard knew the transactions were fraudulent, the Plaintiffs pleaded no facts to show that MasterCard rendered substantial assistance to Vertrue. The facts pleaded establish only that MasterCard was processing the credit card transactions as it did with every transaction, not that it substantially assisted or encouraged the fraud. The claim for aiding and abetting fraudulent misrepresentation must therefore be dismissed.

### c. Conversion and Unjust Enrichment

The Plaintiffs oppose the Defendant's motion to dismiss the claims for conversion and unjust enrichment. Conversion requires that the defendant appropriate property for its own use, in defiance of the plaintiff's right to that property.[64] Here, the Plaintiffs do not allege that they paid money to MasterCard – rather they allege that they paid money to Vertrue and then Vertrue paid fees to MasterCard.[65] In fact, they admit that the payments have been refunded.[66] Unjust enrichment requires a benefit

---

[63] Caboodles Cosmetics, Ltd. P'ship v. Caboodles, LLC, 412 F. Supp. 2d 872, 880-81 (W.D. Tenn. 2006).

[64] Permobil, Inc. v. American Express Travel Related Servs. Co., Inc., 571 F. Supp. 2d 825, 840 (M.D. Tenn. 2008).

[65] Pls.' First Amended Compl. ¶ 18.

[66] Id. ¶ 149.

conferred on the defendant by the plaintiff, that the defendant appreciates the benefit, and that it would be inequitable for the defendant to retain the benefit.[67] Where credit card companies merely process transactions, without any indication that they knew which transactions were fraudulent and which were not, a claim for unjust enrichment is not sufficient to survive a motion to dismiss.[68] As discussed, the Plaintiffs do not allege that MasterCard did anything other than routinely process the credit card transactions. The claims for conversion and unjust enrichment must be dismissed.

## IV. Conclusion

For the reasons stated above, the Plaintiffs' Motion to Exclude [Doc. 27] is DENIED and the Defendant's Motion to Dismiss [Doc. 16] is GRANTED.

SO ORDERED, this 6 day of October, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[67] Freeman Indus., LLC v. Eastman Chemical Co., 172 S.W.3d 512, 525 (Tenn. 2005).

[68] In re Trilegiant Corp., Inc., No. 3:12-cv-00396 (VLB), 2014 WL 1315244, at *39 (D. Conn. Mar. 28, 2014) (applying Connecticut law, which is virtually identical to Tennessee law with regard to unjust enrichment).